# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1242-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LENIC GALVAN,

    Defendant-Appellant.

_____

> Argued April 15, 2026 – Decided July 13, 2026
>
> Before Judges Currier, Berdote Byrne and Jablonski.
>
> On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 22-10-0492.
>
> Christopher J. Vaccaro argued the cause for appellant (Kearns Rotolo Law, attorneys; Christopher J. Vaccaro, on the briefs).
>
> Emily M. M. Pirro, Assistant Prosecutor, argued the cause for respondent (John P. McDonald, Somerset County Prosecutor, attorney; Emily M. M. Pirro, of counsel and on the brief).

PER CURIAM

Defendant Lenic Galvan appeals from convictions for sexual assault and endangering the welfare of a child. He asserts his convictions should be reversed because: his trial counsel was ineffective; the court misapplied the Rape Shield law[1] by barring cross-examination about the victim's prior sexual history and molestation allegations; and the court failed to give a limiting instruction as to one witness's testimony. Defendant further contends resentencing is required because the court committed sentencing errors. Following our review of the parties' arguments, the record, and the applicable law, we affirm defendant's convictions but vacate the sentence and remand for a new sentencing hearing.

I.

Twelve-year-old J.L.[2] was reported missing by her mother and grandmother after she left the family residence early one evening. Several hours later, she was found by the police walking alone near some train tracks. J.L.'s mother noticed hickeys on J.L.'s neck and brought J.L. to the hospital for a physical evaluation.

---

[1] N.J.S.A. 2C:14-7.

[2] We use initials to protect the identity of the victim in this matter. See R. 1:38-3(c)(12).

A-1242-24

While there, J.L. informed her mother she had been hurt and "something bad happened." J.L.'s mother asked whether her daughter had sex, and J.L. nodded her head. While they were waiting to register at the hospital, J.L.'s mother also observed J.L. text messaging with another person using the hospital-provided tablet and observed images of a man, later identified as defendant, accompanied by inappropriate images and messages. J.L.'s mother photographed what she observed and informed the police.

J.L. subsequently disclosed she met defendant on Snapchat, she knew defendant was nineteen years old, and she had told defendant she was thirteen. J.L. further disclosed defendant sent an Uber to J.L.'s home to pick her up and bring her to his house. When J.L. arrived, defendant met her outside and then brought her to his bedroom. According to J.L., the two began to talk and then they began to touch each other. Defendant embraced J.L. and left hickeys on J.L.'s neck and breasts. They disrobed and engaged in sexual intercourse. Defendant removed his ejaculate from J.L.'s back with a cloth.

Defendant then left J.L. alone in his room for approximately forty minutes as he met with his cousin to drink. During this time, J.L.'s friends and family continually attempted to communicate with her by phone calls and text

A-1242-24

messages. Ultimately, she decided to leave. Defendant gave J.L. his jacket, walked her outside of his house, and left her alone on the street.

At the hospital, and as part of a rape investigation, a physician removed dried secretions from J.L.'s neck and left breast and obtained DNA evidence from them.

From the pictures J.L.'s mother provided to the police, investigating officers identified defendant and interviewed him. Defendant gave a statement in which he admitted he "Ubered" J.L. to his home but only intended to "hang out" with her. He acknowledged knowing J.L. because they "bonded" over similar family complaints. However, defendant denied the two had any sexual contact with each other. He provided police with a buccal swab of his DNA.

After providing his DNA, defendant inquired as to J.L.'s age. When the detective asked why he sought this information, defendant noted he just had a "curious thought." Later, defendant acknowledged he had physical contact with J.L. and "cuddled" with her, but again denied any sexual contact. He also noted he was "shocked" to learn J.L. was only twelve years old, having believed she was sixteen or seventeen.

After defendant's DNA from the swab matched the dried secretions taken from J.L.'s body, the police reinterviewed defendant. In a second statement,

4

defendant informed the police his saliva was "accidentally" discharged onto J.L. after she "forcefully" pulled his face onto her cleavage. According to defendant, he attempted to rebuff J.L.'s physical advances. The police searched defendant's phone and discovered explicit Snapchat conversations between defendant and J.L. Contact between the two continued despite police involvement and the ongoing investigation.

A grand jury indicted defendant for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(1); second-degree sexual assault, N.J.S.A. 2C:14-2b; and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a(1).

A series of pretrial proceedings followed, including defendant's motion to suppress the two statements he made to the police. The trial court denied the application. The court also addressed several defense motions intended to attack J.L.'s credibility, including alleged evidence of J.L.'s prior sexual encounter with another minor, a prior allegation of sexual abuse by an adult, and testimony about her alleged mental illness. The trial court denied these applications, finding J.L.'s prior sexual encounter allegations were subject to the Rape Shield law or were irrelevant. Regarding a request for medical records related to J.L.'s alleged mental illness, the court concluded defendant had not made a persuasive evidential showing connecting her mental illness to

her ability to perceive, recall, or recount the events, or to a tendency to fabricate them. The trial court also addressed its concerns about defendant's counsel and his ability to represent defendant.

A jury convicted defendant of sexual assault and endangering the welfare of a child but acquitted him of aggravated sexual assault. At sentencing, the trial court found aggravating factors one, two, three, and nine applied. N.J.S.A. 2C:44-1(a)(1), (2), (3), and (9). The court also considered the arguments of defense counsel that certain mitigating factors should apply. The court concluded only mitigating factor fourteen applied and specifically rejected mitigating factor seven because of defendant's lack of Superior Court convictions, N.J.S.A. 2C:44-1(b)(7), (14). After merging the offenses of which defendant was convicted, the trial court sentenced defendant to an aggregate term of seven years in prison, subject to the No Early Release Act[3] and ordered defendant to comply with Megan's Law[4] and parole supervision for life.[5]

On appeal, defendant raises these issues for our consideration:

---

[3] N.J.S.A. 2C:43-7.2.

[4] N.J.S.A. 2C:7-1 to -23.

[5] N.J.S.A. 2C:43-6.4.

Point I

Defendant was denied his right to a fair trial due to ineffective assistance of counsel during pre-trial and trial proceedings and the court's failure to meaningfully intervene pre-trial to protect defendant's rights.

A. Pre-trial proceedings.

B. Trial proceedings [and] jury instructions.

C. Miranda [6] hearing: The court failed to consider defendant's ambiguous invocation of his right to counsel.

Point II

The court improperly limited the scope of J.L.'s cross-examination and ultimately deprived the defense of questioning J.L. on issues material to her credibility in violation of defendant's Sixth Amendment Right to [c]onfront his accuser.

A. The court failed to conduct a Rule 104(a) hearing to determine whether the prior sexual abuse allegations were true or false.

Point III

The court improperly limited the scope of [J.L.'s mother's] cross-examination.

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1242-24

Point IV

The court erred in balancing the aggravating and mitigating factors at sentencing by relying on, and referencing, evidence rejected by the jury and inconsistent with its verdict. This error resulted in imposition on the defendant of an improper and excessive sentence.

## II.

Defendant's first point of error concerns the alleged ineffective assistance of trial counsel throughout the litigation. Generally, an ineffective assistance of counsel claim cannot be raised on direct appeal because a hearing must be held to develop a record in which trial counsel may "explain the reasons for [counsel's] conduct and inaction" to permit a trial judge to consider and rule on the claims and to assess any prejudice. State v. Preciose, 129 N.J. 451, 462 (1992) (quoting State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991)). In light of this principle, we decline to address the issues raised regarding counsel's representation of defendant pertaining to the motion to suppress statements, pre-trial proceedings, and the trial itself because these claims involve allegations and evidence outside the trial record, are focused on trial counsel's representation and assistance, and are, therefore, more appropriate for post-conviction relief. See id. at 460.

8

### III.

Second, defendant argues his conviction should be reversed because the trial court failed to conduct a N.J.R.E. 104(a) hearing to determine whether J.L.'s sexual history and prior abuse allegations were relevant to the proceedings. As a result, he argues his ability to effectively cross-examine J.L. was improperly limited. Specifically, the trial court barred defense counsel from questioning J.L. about her prior sexual interaction with a similarly-aged minor concluding it lacked probative value and was protected under the Rape Shield Law. Additionally, the court prohibited any discussion regarding the veracity of J.L.'s prior disclosure of sexual molestation by her stepfather, finding those details to be irrelevant.

We conclude the trial court properly exercised its discretion in ruling on these evidential issues. See Hrymoc v. Ethicon, Inc., 254 N.J. 446, 463 (2023) (holding evidentiary rulings by a trial court are afforded substantial deference and will only be overturned on appellate review if there is a clear mistaken exercise of discretion).

### A.

The trial court properly barred any reference to J.L.'s prior sexual encounters. The Rape Shield Law governs the admissibility of "evidence of

A-1242-24

the victim's previous sexual conduct" in sexual assault-related offenses. N.J.S.A. 2C:14-7(a). It places "restrictions on a defendant's ability to introduce evidence of [a] rape victim's past sexual conduct" in prosecutions for certain sexual offenses, including aggravated sexual assault, sexual assault, and endangering the welfare of a child. State v. J.D., 211 N.J. 344, 355 (2012) (quoting Assemb. Judiciary, L. & Pub. Safety Comm. Statement to A. 677, at 1 (Jan. 20, 1994) reprinted in N.J.S.A. 2C:14-7 (2005)); N.J.S.A. 2C:14-7. In that regard "[u]nder the Rape Shield Law, the probative value of the victim's prior sexual conduct 'depends on clear proof that [the conduct] occurred, that [it is] relevant to a material issue in the case, and that [it is] necessary to a defense.'" State v. Perry, 225 N.J. 222, 237 (2016) (alterations in original) (quoting State v. J.A.C., 210 N.J. 281, 300 (2012)). The prejudice contemplated by the Rape Shield Law includes "the trauma to the victim," whether admission of the evidence would "invade the victim's privacy," and the "need to guard victims from excessive cross-examination and prevent undue jury confusion." Ibid.

In determining whether to admit evidence of a victim's prior sexual conduct, the trial judge must "weigh the relevance of the proffered evidence, its necessity to the defense, and its apparent veracity against its potential to

humiliate the victim, invade [his or] her privacy, and confuse the jury." J.D., 211 N.J. at 358. That determination "'is exquisitely fact sensitive' and 'depends on the facts of each case.'" Perry, 225 N.J. at 238 (quoting J.D., 211 N.J. at 358).

At the pre-trial hearing in this matter, defense counsel indicated his intention to introduce evidence of a prior interaction between J.L. and another boy of similar age to her own. Counsel asserted this encounter occurred nearly two months before the incident involving defendant. During her interview with police, J.L. stated she had ceased communication with this boy by the time of the incident with defendant. The trial court determined counsel's argument was based on "the most minuscule, speculative piece of information[,] . . . where [defendant] said, 'well, I heard she had sex with a boy,'" and concluded evidence of J.L.'s sexual conduct with the boy was irrelevant, as "the relationship between . . . this other boy and the allegations in this case are completely nonexistent." We find no misapplication of the court's discretion in precluding evidence of J.L.'s prior sexual encounters.

A-1242-24

B.

The trial court correctly denied defendant's request for a Rule 104(a) hearing to examine J.L.'s credibility regarding her claim of prior molestation by her stepfather. The court found this evidence irrelevant.

The existence of this evidence was raised in a letter to the court in which defense counsel wrote:

> [J.L.] told the [d]efendant that she was being sent the next day to the Carrier Clinic, she did not want to go, she further expressed that her stepdad was molesting her, we have no other evidence other than what she told to the [d]efendant. Was she lying? Only the State knows, why was the [s]tepdad not prosecuted?

The trial court determined defense counsel failed to present evidence regarding the truth or falsity of the allegations against J.L.'s stepfather, noting the absence of formal documentation to support whether the alleged molestation actually occurred or was investigated. Because there was no clear showing the allegations against J.L.'s stepfather were false or material to the defense, the court found the potential prejudice and invasion of J.L.'s privacy outweighed the minimal probative value and questionable evidential support. The trial court reasonably concluded this inquiry had virtually no probative value to any relevant issue. We conclude the trial court properly exercised its discretion when it denied defendant's request for a hearing.

12

IV.

Defendant contends the trial court erred by failing to provide the jury with a limiting instruction following testimony from J.L.'s mother. Specifically, defendant asserts the jury should have received a "strong limiting instruction" after J.L.'s mother referenced a "rape kit" and made several prejudicial, gratuitous, and inflammatory remarks about defendant throughout her trial testimony. Defense counsel did not object to this testimony at trial. Therefore, we review under a plain error standard. R. 2:10-2.

When a party does not properly preserve an issue for appeal, we may consider whether it rises to the level of plain error under Rule 2:10-2; State v. Clark, 251 N.J. 266, 286-87 (2022). Such a high bar "require[s] reversal only where the possibility of an injustice is 'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Trinidad, 241 N.J. 425, 445 (2020) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Although J.L.'s mother occasionally offered additional information beyond the scope of the questions asked, the judge promptly reminded her to confine her answers to the questions posed. Moreover, at the conclusion of the trial, the judge delivered the standard jury instructions, which included

13

guidance on the burden of proof, the requirement to consider all evidence, and the jury's role as the sole factfinder. We conclude the comments made by J.L.'s mother did not improperly influence the jury's verdict, particularly in light of the substantial corroborating evidence including J.L.'s own testimony and supporting scientific evidence.

## V.

In his final point of error, defendant contends the trial court improperly balanced the aggravating and mitigating factors at sentencing by relying on and referencing evidence rejected by the jury and inconsistent with its verdict. Defendant asserts this error led to the imposition of an improper and excessive sentence.

Our standard of review of a criminal sentence is deferential. State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)). We will affirm a trial court's sentence unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent evidence in the record'; or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). We defer also to the sentencing

court's factual findings and will not "second-guess" them. State v. Case, 220 N.J. 49, 65 (2014).

Once a sentencing court balances the aggravating and mitigating factors, N.J.S.A. 2C:44-1(a) and (b), it "may impose a term within the permissible range for the offense." State v. Morente-Dubon, 474 N.J. Super. 197, 208 (App. Div. 2022) (quoting State v. Bieniek, 200 N.J. 601, 608 (2010)); see also Case, 220 N.J. at 65 (instructing appellate courts not to substitute their judgment for that of the sentencing court, provided the "aggravating and mitigating factors are identified [and] supported by competent, credible evidence in the record, and properly balanced").

We are satisfied the court's quantitative and qualitative assessment of defendant's background supported aggravating factors two, three, and nine because they reflected the severity of the harm defendant inflicted on J.L., showed a strong risk of re-offense, and underscored the need to deter him from future criminal activity, N.J.S.A. 2C:44-1(a)(2), (3), (9). Similarly we conclude the trial court properly denied applying mitigating factor seven, N.J.S.A. 2C:44-1(b)(7). However, we part ways with the trial court's decision to find aggravating factor one, N.J.S.A. 2C:44-1(a)(1).

15

## A.

Concluding the offense "was committed in an especially heinous, cruel, or depraved manner" and attributing to aggravating factor one "great weight," the trial court reviewed the record and made certain conclusions. The trial court found defendant persistently pressured and manipulated J.L. online, despite knowing her age, to come to his house for sex. The court found defendant's actions included coercion, emotional manipulation, and disregard for the victim's vulnerable state, culminating in illegal sexual conduct. Further, the court characterized defendant's behavior as "degrading, disrespectful and predatory."

Courts applying aggravating factor one "focus on the gravity of the defendant's conduct, considering both its impact on its immediate victim and the overall circumstances surrounding the criminal event." State v. Lawless, 214 N.J. 594, 609-10 (2013). "[A]n application of [this factor] must be premised upon factors independent of the elements of the crime and firmly grounded in the record." Fuentes, 217 N.J. at 63. While the trial court noted its application of aggravating factor one on facts established in the record, the described conduct does not rise to the level of "heinous, cruel, or depraved" that is required for application of the factor. Heinous and depraved acts are

those committed with "extreme brutality." State v. Francisco, 471 N.J. Super. 386, 427 (App. Div. 2022) (citing Fuentes, 217 N.J. at 75).

Additionally, "[i]n order to find [] an offense was committed in a 'cruel' manner, . . . there must be evidence defendant inflicted pain or suffering gratuitously and beyond which was required to establish the elements of the crime charged." State v. A.T.C., 454 N.J. Super. 235, 255-56 (App. Div. 2018) (citing State v. O'Donnell, 117 N.J. 210, 217-18 (1989)). Courts have applied this factor in cases charging defendants with a "long course of sadistic, violent [child] abuse," State v. T.C., 347 N.J. Super. 219, 224, 244 (App. Div. 2002); in cases concerning the painful deaths of children, State v. Lewis, 223 N.J. Super. 145, 148 (App. Div. 1988); where the defendant placed a victim in a hostage situation, State v. Frost, 242 N.J. Super. 601, 621-22 (App. Div. 1990); and where a defendant "inflicted numerous wounds on the victim, chased the victim when he tried to escape, and fatally struck him in the head with such force the hammer penetrated his skull," Francisco, 471 N.J. Super. at 427. Defendant's actions in this case, although inappropriate and disturbing, do not meet the jurisprudential criteria for the application of aggravating factor number one.

B.

Defendant argues the trial court erred by refusing to find mitigating factor seven, "defendant has no history of prior delinquency or criminal activity or had led a law-abiding life for a substantial period of time before the commission of the present offense." N.J.S.A. 2C:44-1(b)(7). While defendant had not previously been convicted of an indictable offense, the sentencing judge did not apply this factor because defendant was the adjudicated perpetrator in a matter resulting in a final restraining order as well as a pending complaint in municipal court for an assaultive offense involving a child similar in age to the victim here.

We discern no mistaken exercise of discretion in the court's conclusion. "Adult arrests that do not result in convictions may be 'relevant to the character of the sentence . . . imposed.'" State v. Rice, 425 N.J. Super. 375, 382 (App. Div. 2012) (omission in original) (quoting State v. Tanksley, 245 N.J. Super. 390, 397 (App. Div. 1991)). "A sentencing court, therefore, does not abuse its discretion by refusing to find mitigating factor seven based upon . . . charges that did not result in convictions." Ibid. (citing State v. Torres, 313 N.J. Super. 129, 162 (App. Div. 1998)). Therefore, we discern no error in the trial court's conclusion not to credit defendant with mitigating factor seven.

A-1242-24

To the extent we have not addressed any of defendant's remaining arguments, it is because we have determined they lack sufficient merit to warrant a discussion in a written opinion.  See R. 2:11-3(e)(2).

We affirm defendant's convictions, but vacate the sentence and remand for a new sentencing hearing at which the sentencing judge may not consider aggravating factor one.

Affirmed in part, vacated in part and remanded for proceedings in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division